FILED

*December 8, 2015*

Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-13-00790-CV
8070550
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/3/2015 11:34:59 AM
JEFFREY D. KYLE
CLERK

No. 03-13-00790-CV

IN THE COURT OF APPEALS

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/3/2015 11:34:59 AM
JEFFREY D. KYLE
Clerk

FOR THE THIRD DISTRICT OF TEXAS

AUSTIN, TEXAS

---

## T. MARK ANDERSON, AS CO-EXECUTOR OF THE ESTATE OF TED M. ANDERSON, AND CHRISTINE ANDERSON, AS CO-EXECUTOR OF THE ESTATE OF TED M. ANDERSON

v.

## RICHARD T. ARCHER, DAVID R. ARCHER, CAROL ARCHER BUGG, JOHN V. ARCHER, KAREN ARCHER BALL, AND SHERRI ARCHER

---

## CROSS-APPELLEES' BRIEF

---

Scott R. Kidd
State Bar No. 11385500
512-330-1713
scott@kiddlawaustin.com
Scott V. Kidd
State Bar No. 24065556
512-542-9895
svk@kiddlawaustin.com
KIDD LAW FIRM
819 West 11th Street
Austin, TX 78701
512-330-1709 (fax)

Oral Argument Requested

# TABLE OF CONTENTS

Table of Contents     i

Index of Authorities     ii

Caption     1

The Archers Are Not Entitled To An Additur Of Claimed Attorneys Fees     2

There Can Be No Additur Of The Amount Of The Settlement With The Christian Charities     8

Conclusion     12

Prayer     13

Certificate Of Compliance with TRAP 9.4(i)(3)     13

Certificate of Service     14

# INDEX OF AUTHORITIES

## CASES

*City of Keller v. Wilson,* 168 S.W.3d 802,
    822-823 (Tex. 2005)      2

*Gulf, Colorado & Santa Fe Ry. Co. v. Deen,*
    158 Tex. 466, 312 S.W.2d 933, 937 (1958)      9, 10

*Gulf States Utility Co. v. Low,* 79 S.W.3d 698,
    703 (Tex. 2002)      5

*Larson v. Cactus Utility Co.,* 730 S.W.2d 640,
    641 (Tex. 1987)      10

*Midland Western Building, LLC v. First Service Air
    Conditioning Contractors, Inc.,* 300 S.W.3d 738,
    739 (Tex. 2009)      10

*National Plan Administrators v. National Health Ins.
    Co.,* 150 S.W.3d 718, 740 (Tex. App.—Austin 2004),
    *rev'd on other grounds* 235 S.W.3d 695 (Tex. 2007)      5, 8

*Oyster Creek Financial Corp. v. Richwood Investments,
    Inc.,* 176 S.W.3d 307 (Tex. App.—Houston [1st Dist.]
    2004, pet. den.)      11

*Ponce v. Sandoval,* 68 S.W.3d 799, 805 (Tex. App.—
    Amarillo 2001, no pet.)      9

*Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex. 1986)      10

*Potter v. GMP, L.L.C.,* 141 S.W.3d 698, 703 (Tex. App.—
    San Antonio 2004, pet. dism'd)      5

## RULES

TEX. R. CIV. P. 301                                          9

TEX. R. CIV. P. 320                                          10

No. 03-13-00790-CV

## IN THE COURT OF APPEALS

## FOR THE THIRD DISTRICT OF TEXAS

## AUSTIN, TEXAS

## T. MARK ANDERSON, AS CO-EXECUTOR OF THE ESTATE OF TED M. ANDERSON, AND CHRISTINE ANDERSON, AS CO-EXECUTOR OF THE ESTATE OF TED M. ANDERSON

v.

## RICHARD T. ARCHER, DAVID R. ARCHER, CAROL ARCHER BUGG, JOHN V. ARCHER, KAREN ARCHER BALL, AND SHERRI ARCHER

## CROSS-APPELLEES' BRIEF

T. Mark Anderson, as Co-Executor of the Estate of Ted M. Anderson, and Christine Anderson, as Co-Executor of the Estate of Ted M. Anderson, file this Cross-Appellees' Brief in response to the cross-points raised by Richard T. Archer, David R. Archer, Carol Archer Bugg, John V. Archer, Karen Archer Ball, and Sherri Archer ("the Archers"). This brief is limited to the cross-issues raised in the Archers' brief, and

1

appellants are tendering a separate reply brief to the responsive brief filed by the Archers.

### The Archers Are Not Entitled to An Additur of Claimed Attorneys Fees

The Archers' first cross-point argues that they established their damages as a matter of law, and that the jury was simply not permitted to award them less than the maximum amount that the Archers asked for. The Archers are wrong. The damage question submitted by the court below was the one requested by the Archers. (CR 542, 545). The trial court having submitted the question they requested, the Archers now do not like the answer they received from the jury.

The Archers are complaining that the court did not grant the motion for JNOV that they filed after receiving this verdict. The standard the court must apply in determining whether a JNOV would be proper is stated in *City of Keller v. Wilson,* 168 S.W.3d 802, 822-823 (Tex. 2005). A trial court properly denies a motion for directed verdict and a motion for JNOV if, looking at all the evidence in the light most favorable to the fact challenged or the finding found by the jury, a

2

reasonable trier of fact could have formed a firm belief or conviction that the fact or finding was true.

The Archers try to cast their cross-point as an attack on a jury verdict on attorneys fees. It is not. There were no jury questions submitted which asked about attorneys fees. The question that was submitted was a general question about damages. That question was as follows:

> What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their damages, if any, proximately caused by the tortious interference?
>
>> "Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom.
>>
>> Consider the following element of damages and none other: the difference in value, if any, of the inheritance actually received by Plaintiffs and the value of the inheritance that Plaintiffs would have received from Jack Archer had there been no interference by the Defendant.
>
> Answer in dollars and cents, if any.
>
> Answer: $2,006,150.00

The Archers argued below that one component of the damages they allegedly suffered were the attorneys fees they incurred as a result of the alleged tortious interference by Ted Anderson. (RR. Vol. 3, pp. 176-177). But under their evidence the Archers sought to recover the fees and expenses for various lawsuits: the guardianship proceeding in Blanco County, the guardianship proceeding in Bexar County, various legal malpractice actions, and suits against guardians. (RR. Vol. 3, pp. 136-137, 144, 154, 164).

The Archers did offer evidence of their fee arrangements with their attorneys. (RR Vol. 3 p. 138, Vol. 6 p. 22; Pl. Ex. 14, 22). That fee arrangement began as an hourly fee and then morphed into a contingent fee arrangement. (RR Vol. 3 p. 138, 155). The Archers offered some evidence that they had paid attorneys fees and litigation expenses under their various arrangements up to an amount of $2,865,928.00. (Vol. 6 p. 52). But the jury was not asked what amount was paid under the Archers' various fee agreements with their lawyers. The jury was asked for the amount of money that would compensate the Archers for the damages *proximately caused by* Ted Anderson's alleged interference. (CR 646, 651)

The jury generally has broad discretion to award damages within the range of evidence presented at trial. *Gulf States Utility Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). The jury's findings may not be set aside merely because its reasoning in arriving at the amount of damages is unclear. *Potter v. GMP, L.L.C.*, 141 S.W.3d 698, 703 (Tex. App.—San Antonio 2004, pet. dism'd). When the trial evidence supports a range of awards, as opposed to two distinct options, an award within that range is an appropriate exercise of the jury's discretion, and the reviewing court is not permitted to speculate on how the jury actually arrived at its award. *National Plan Administrators v. National Health Ins. Co.*, 150 S.W.3d 718, 740 (Tex. App.—Austin 2004) *rev'd on other grounds*, 235 S.W.3d 695 (Tex. 2007).

The evidence of the Archers' claimed damages consisted primarily of the testimony of Carol Bugg, Mary Haught, and Frank Ikard, exhibits related to the services provided to the Archers by those lawyers, the expenses related to those services, and exhibits related to the settlements with various persons sued by the Archers over the years. (RR Vol. 3 pp. 136-138, 144, 154, 164; Vol. 6 pp. 15, 22, 30, 31, 43; Pl. Ex. 203, 204, 205, 206, 207, 208, 210, 211, 212). The Archers also offered evidence about their settlement with the Christian Charities.

Haught and Ikard testified in summary fashion about the various lawsuits they filed and actions they took in representation of the Archers. Those lawyers also testified about the agreements made with the Archers, including the morphing of their hourly fee into a contingent fee, the acquisition of an interest in the Archer Ranch, and the sale of that interest to the Archers. Notably, the Archers also introduced into evidence billing records reflecting detailed descriptions of work by the lawyers on each of the two guardianships, the malpractice cases against the various lawyers, the suits against the guardians and others. (Pl. Ex. 210). While Haught and Ikard testified as to the alleged amount of the contingent fee under their agreement with the Archers, the jury had before it the lawyers' time records and could decide that certain of the charges were not caused by of the alleged tortious actions of Ted Anderson. As an example, the jury could reasonably have determined that the initial guardianship proceedings were not the result of the alleged tortious interference by Ted Anderson and have eliminated the legal fees associated with that entire proceeding from its damage calculation. The jury could have reasonably determined that the legal fees for the entire Bexar County guardianship proceeding, or some part of it, were not the result of Ted Anderson's alleged interference.

6

Likewise, the jury could have determined that the legal malpractice actions, in whole or in part, were unrelated to the alleged tortious interference. Additionally, the damage question was not merely about the damages that resulted from the alleged interference, it was a question that asked for the damages *proximately caused by* the alleged interference. Proximate cause by its definition requires foreseeability of the harm and damages sought. The jury could have reasonably determined that the only legal fees that were proximately caused by the alleged interference were those incurred in getting the Christian Charities to agree to settle. Eliminating some of these claimed attorneys fees from the damage calculation, as the jury could reasonably have done, will reduce the amount that the jury could award as damages to an amount below that awarded by the jury in its verdict, even when the amount of the claimed $588,054.00 settlement with the Christian Charities is included.

We do not know, and are not permitted to speculate, as to how the jury arrived at its answer to the damage question. The jury's answer is within the range of possible verdicts, and is therefore supported by evidence. The trial court properly denied the Archers' motion for JNOV.

## There Can Be No Additur Of The Amount Of The Settlement With The Christian Charities

The Archers asked the trial court to add $588,054.00 to the amount of the jury's verdict by way of a motion for judgment NOV. The trial court purported to overrule the Archers' motion for judgment NOV, but then essentially granted it by adding $588,054.00 to the jury's verdict in its judgment. (CR 1209, 1470).

The Archer's treat the claim for the amount of the settlement with the Christian Charities as if it were something separate and apart from the damages awarded in the jury's verdict, but it is not. The damage question submitted to the jury was a broad submission of damages without any separate blanks for the elements of those damages, and no direction to the jury as to the specific elements that it was to consider other than the difference in inheritance that the plaintiffs would have received absent the alleged interference. That is the form of the question that the Archers requested. The court is not permitted to speculate as to how the jury arrived at its answer to the damage question. *National Plan Administrators*, 150 S.W.3d at 740. Accordingly, neither this court nor the trial court is entitled to speculate as to whether the jury's answer to the damage question included the

$588,054.00 that the Archers subsequently claimed had been omitted by the jury. The answer given by the jury is within the range of possible damage verdicts under the evidence in the case. Simply adding $588,054.00 to the verdict found by the jury would be, and was, improper.

What the Archers asked of the trial court, and are asking of this court, is for the court to engage in "additur." The Rules of Civil Procedure do not provide for "additur" by courts to increase the amount found as damages by the jury in response to properly submitted damage questions. *Ponce v. Sandoval*, 68 S.W.3d 799, 805 (Tex. App.—Amarillo 2001, no pet.). A trial court is limited in the actions it may take in regard to a jury finding on damages. If a jury finding has no support in the evidence, the finding may be disregarded. See TEX. R. CIV. P. 301; *Gulf, Colorado & Santa Fe Ry. Co. v. Deen*, 158 Tex. 466, 312 S.W.2d 933, 937 (1958). If the evidence was conclusive as to the matter so that no question remained to be resolved by the jury and a directed verdict would have been proper, then the finding may also be disregarded. TEX. R. CIV. P. 301; *Deen*, 312 S.W.2d at 937. If legally sufficient evidence supports a finding of damages, but the jury's damage finding is manifestly too small or too large, a new trial may be granted, but that is

all that may be done by the trial court. TEX. R. CIV. P. 320; *Deen,* 312 S.W.2d at 937. No court is free to simply substitute its judgment for that of the jury, or to reweigh the evidence, set aside a jury finding, and make a different finding merely because the court feels a different result is more reasonable. See *Larson v. Cactus Utility Co.,* 730 S.W.2d 640, 641 (Tex. 1987); *Pool v. Ford Motor Company,* 715 S.W.2d 629, 634 (Tex. 1986).

The Archers assert that the Andersons did not controvert their evidence of attorneys fees. In the present case, Carol Bugg and the lawyer-witnesses called by the Archers were cross-examined about the various suits that had been filed and the actions that had been taken. (RR Vol. 3 pp. 188-190, 191-196; Vol. 4 pp. 24, 28, 57-60; Vol. 6 pp. 59-62, 65-66, 127). As the Supreme Court of Texas noted in *Midland Western Building, LLC v. First Service Air Conditioning Contractors, Inc.,* 300 S.W.3d 738, 739 (Tex. 2009), an attorneys fee award is not supported by uncontradicted testimony when the testifying lawyer has admitted some potentially adverse facts on cross-examination. Cross-examination is the offering of controverting evidence. There were admissions by Carol Bugg and the testifying lawyer-witnesses that some of the lawsuits filed by them had nothing to do with Ted Anderson. In

addition, the suits against the guardians were described, and evidence was introduced about the attorneys' work and charges for that representation. The time records for the lawyers' representation in the guardianship proceedings, the legal malpractice cases, and the cases against the guardians were introduced by the Archers. (Pl. Ex. 210). The jury was asked to determine the damages that were proximately caused by the alleged tortious interference. The jury had an obligation to determine which of those suits and charges were the result of the alleged tortious interference by Ted Anderson and which were not, and which were reasonably foreseeable and which were not. The jury was well within its rights to reject all of the attorneys fee claims that the Archers had not proved were proximately caused by Ted Anderson's alleged tortious interference. The jury's answer to the single damage question probably already included the $588,054.00 that the Archers wanted the trial court to simply add to the jury's considered verdict. But the amount of those damages was disputed, the verdict is within the range of the evidence on damages, and no damage figure was established as a matter of law. For a disputed amount of damages, neither the trial court nor this court has the authority to employ additur. *Oyster Creek Financial Corp. v. Richwood Investments, Inc.,* 176 S.W.3d

307 (Tex. App.—Houston [1st Dist] 2004, pet. den.). Accordingly, this court must overrule the Archers' second cross-point.

## Conclusion

The Archers' cross-points assume that the jury only awarded them a part of their attorneys fees and none of the cost of the settlement with the Christian Charities, but that assumption is not only baseless, it is improper. The damage submission that the Archers requested, and which the trial court gave, is a broad, general damage submission. The Archers' evidence on attorneys fees was not clear, direct, positive, and free from contradiction. The jury was not asked to find a reasonable attorneys fee for the work done by the Archers' attorneys; the jury was asked to find the damages that proximately resulted from Ted Anderson's alleged tortious interference. The jury could reasonably decide that various of the actions taken by those lawyers were not the result of Ted Anderson's alleged interference, and have only awarded a significantly lower amount than the Archers sought. The court cannot assume that the jury did not include the $588,054.00 settlement with the Christian Charities in the damages it awarded. While the Archers may not like the verdict as to damages, the amount awarded by the jury

12

is within the range of values in the evidence.  Accordingly, the Archers cross-points must be overruled.

## PRAYER

Wherefore, the Andersons pray that the court overrule the Archers' cross-points.

KIDD LAW FIRM
819 West 11th Street
Austin, TX  78701
512-330-1709 (fax)

Scott R. Kidd
State Bar No. 11385500
512-330-1713
scott@kiddlawaustin.com
Scott V. Kidd
State Bar No. 24065556
512-542-9895
svk@kiddlawaustin.com

Certificate of Compliance with TRAP 9.4(i)(3)

This brief contains a total of 2502 words excluding the parts exempted under TRAP 9.4(i)(1), as verified by Microsoft Word for Mac.  This brief is therefore in compliance with TRAP 9.4(i)(2)(B).

13

## Certificate of Service

A copy of this brief has been served on Laurie Ratliff, 400 W. 15th Street, Suite 975, Austin, TX 78701, by email and fax on the 3rd day of December, 2015.

Scott R. Kidd